KAREN P. HEWITT
United States Attorney
MITCHELL D. DEMBIN
Assistant U. S. Attorney
California Bar No. 114017
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5558
Email: Mitch.Dembin@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>STEVEN SCOTT DECKER,<br>Defendant. | Criminal Case No. 00cr2579-BTM<br><br>DATE: December 21, 2007<br>TIME: 1:30 p.m.<br><br>GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:<br><br>(1) COMPEL DISCOVERY; AND<br>(2) FILE FURTHER MOTIONS<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

The United States of America, by its counsel, Karen P. Hewitt, United States Attorney, and Mitchell D. Dembin, Assistant United States Attorney, hereby responds to and opposes the Defendant's Motions to: (1) Compel Discovery; and, (2) File Further Motions.

I

STATEMENT OF FACTS

Beginning in 1989 and continuing until approximately September 3, 1998, defendant was a computer programmer employed by various entities but assigned as a contractor to work at the United States Navy's Space and Naval Warfare Systems Command ("SPAWAR"). Defendant's primary assignment throughout his tenure was to work on the continuing development and deployment of the Navy's Global Command and Control System ("GCCS"). GCCS is a computerized system designed to provide tactical and readiness information regarding Navy ships and ashore commands. It is and was

a critical information system to the Navy. Defendant asked to be removed from the GCCS project on or about September 3, 1998. At the time, he was employed by a contractor called Syzygy and the assignment to GCCS at SPAWAR was his only job. Defendant's removal from SPAWAR should have resulted in the disabling of all of his SPAWAR accounts. Unfortunately, although some were disabled, many were not. And, due to his continued employment with Syzygy, defendant has a secure access tunnel to SPAWAR through Syzygy which continued to be a SPAWAR contractor.

On September 28, 1998, several SPAWAR computer users reported that GCCS computer files were missing. These reports prompted an investigation entailing the collection and analysis of computer logs and other data. The investigation revealed that beginning on September 2, 1998, and continuing to September 28, 1998, defendant repeatedly accessed the SPAWAR network without authority and read the stored electronic mail of his supervisor, Paul Kennedy. More seriously, the logs revealed that beginning on September 3 and continuing to September 28, 1998, defendant repeatedly accessed SPAWAR and deleted and attempted to delete GCCS files. In the process, he used the accounts of other SPAWAR users, created new accounts for these users to elevate their privileges and, for files that he could not delete initially, attempted to change the privilege level of the user he was spoofing or the file he was attempting to delete to enable the deletion. The defendant also deleted a number of log files on the computers that he was accessing. Unbeknownst to the defendant, SPAWAR also had a system to record activity independent of the affected servers.

Defendant was interviewed by federal agents in October 1998. At the time of the interview, only the logs of September 25, 1998, had been analyzed. Defendant admitted his unauthorized access, admitted deleting files, using the accounts of others without authority, creating new accounts for these users without authority, and reading the electronic mail of Paul Kennedy. Defendant also admitted to his bosses at Syzygy that he had broken into SPAWAR and deleted files. Defendant was terminated from Syzygy in October 1998.

Defendant was indicted in August 2000. The indictment was not sealed. Prior to the indictment, defendant obtained new employment with another government contractor and was assigned to work at the Ramstein Air Force Base in Germany. In October 2000, defendant was terminated from that

employment and was issued a ticket to return to the United States in November 2000. Defendant did not make that flight. Based upon the United States arrest warrant, an Interpol "Red Notice" was issued. Pursuant to that notice, defendant was arrested crossing the border from Germany into the Czech Republic in May 2001. The United States did not request defendant's extradition. The extradition treaty between the United States and Czech Republic did not address computer hacking. The destruction of government property charge may have supported extradition but only for that charge. Since hacking was the gravamen of the offense, the United States opted to wait for the defendant to decide that he voluntarily wanted to return to the United States. Defendant's United States passport was seized to ensure that the defendant would need to present himself to the United States Embassy to return home.

In October 2001, defendant contacted the United States Embassy and stated that he wished to return home. Defendant was told that he could return to the United States but that he would be arrested upon his arrival. Defendant did not pursue the matter further at that time. According to Mr. Decker's counsel, defendant also initiated negotiations to return home in 2004. The United States Attorney's file does not reflect that attempt. In the summer of 2006, I was contacted by defendant's counsel and informed that Mr. Decker wished to return home. That call resulted in the defendant's return.

## II

## POINTS AND AUTHORITIES

### A. The Government Has and Will Continue to Comply With Its Discovery Obligations

The United States is aware of its obligations under Rule 16, Fed. R. Crim. P., and will continue to comply with all discovery rules. In fact, the United States, in providing discovery to the defendant, has substantially exceeded the requirements of Rule 16 and associated case law. Regarding the specific requests made by the defendant, the United States responds as follows:

#### 1. Defendant's Statements

The United States has provided the defendant with interview reports of the defendant's interview with government agents. In addition, the United States has provided to the defendant interview reports of interviews of others who reported statements of the defendant regarding the instant offenses.

2. Arrest Reports, Notes and Dispatch Tapes

There are no such reports, notes or tapes.

3. Brady Material

The United States is aware of its obligations under Brady and its progeny. Counsel for the government is unaware of any evidence favorable to the defendant.

4. Information That May Result in a Lower Guideline Sentence.

Any such information would likely qualify as discoverable under Brady. No such information is known to exist.

5. Information That May Result in a Lower Sentence Under 18 USC 3553.

See respoonse to item 4 above.

6. Defendant's Prior Record

The defendant has no known prior record.

7. Rule 404(b) Evidence

The United States will provide the defendant with notice of its intent to present evidence pursuant to Rule 404(b) two weeks before trial or as otherwise ordered by the Court. Counsel for the government is unaware of any such evidence at this time. To the extent that evidence of other crimes will be presented during the trial of this case, such as prior unlawful accesses to the SPAWAR network, such acts are part of the res gestae of the instant offense and are not being offered under Rule 404(b).

8. Evidence Seized

The United States will provide for inspection any items within the government's possession, custody, or control which are either material to preparing the defense; intended for use in the government's case-in-chief at trial; or, were obtained from or belong to the defendant. There is no evidence in the government's possession that is favorable to the defense. The government has provided to the defendant an interactive compact disk containing relevant logs, electronic mail correspondence and analysis which is intended for use during the government's case-in-chief at trial. In October 1998, defendant consented to the imaging of his computer's hard drive. The computer was returned to the defendant. It is premature to know, at this time, which other items, if any, qualify for disclosure.

9. Preservation of Evidence

All evidence in the custody of the United States is being preserved.

10. Tangible Objects

This requests essentially repeats request 8. The government's response is the same.

11. Evidence of Bias or Motive to Lie

This is covered by Brady and any such evidence will be disclosed. No such evidence is known to exist at this time.

12. Impeachment Evidence

This is covered by Brady and any such evidence will be disclosed. No such evidence is known to exist at this time.

13. Evidence of Criminal Investigation of Government Witness

This information will be disclosed only to the extent that it qualifies under Brady. A government witness under investigation cannot be attempting to curry favor with the government unless the witness knows that he or she is under investigation. No such evidence is known to exist at this time.

14. Evidence affecting perception

This is covered by Brady and any such evidence will be disclosed. No such evidence is known to exist at this time.

15. Witness Addresses

The government will provide a witness list in advance of trial. The United States will protect the privacy of its witnesses. The United States has not decided upon its witness list at this time. Once the list is determined, addresses will not be provided. Witnesses who cannot be located by the defendant will be contacted by the government and given the opportunity to contact the defense.

16. Witnesses Favorable to the Defendant

This is covered by Brady and any such witnesses will be disclosed. No such witnesses are known to exist at this time.

17. Statement Relevant to the Defense

This is covered by Brady and any such evidence will be disclosed. No such evidence is known to exist at this time.

18. Jencks Act Material

For the convenience of the Court and to encourage efficient use of trial time, the defense will be provided with Jencks Act material in advance of trial.

19. Giglio Information

No promises have been made to any prospective government witness.

20. Reports of Scientific Tests

No fingerprinting was done in this case. The defendant has been provided a report by the Defense Computer Forensics Laboratory regarding its review of the image of the hard drive from the defendant's computer.

21. Informants and Cooperating Witnesses

There are no informants or cooperating witnesses involved in this case.

22. Expert Witnesses

The government will comply with Rule 16(a)(1)(G).

23. Residual Request

This request lacks specificity and requires no response.

B. Defendant's Motion for Leave to File Additional Motions May be Granted

The United States has no objection to the Court setting a date for further motions.

//

//

//

//

//

//

III

CONCLUSION

For the foregoing reasons, the defendant's motions should be denied and granted as provided herein.

Date: December 18, 2007.

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/Mitchell D. Dembin
MITCHELL D. DEMBIN
Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. STEVEN SCOTT DECKER, Defendant. | Case No. 00cr2579BTM<br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, MITCHELL D. DEMBIN, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of Government's Response and Opposition to Defendant's Motions on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Paul Decicco
   Email: pdecicco@pmdlaw.com

2. Robert Schlein
   Email: robert@rcslaw.org

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 18, 2007.

s/Mitchell D. Dembin
MITCHELL D. DEMBIN